NATHAN K. PARKER, JR., AND JANICE C. PARKER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 13529–78.   Filed April 10, 1980.

---

*Nathan K. Parker, Jr.,* pro se.
*Edward J. Laubach, Jr.,* for the respondent.

OPINION

STERRETT, *Judge:* By letter dated September 8, 1978, respondent determined a deficiency in income taxes due from petitioners Nathan K. Parker, Jr., and Janice C. Parker for their taxable year December 31, 1976, in the amount of $6,131.63. The only issue for our decision is whether section 1231 capital gain is an item of tax preference within the meaning of section 57(a)(9)(A), I.R.C. 1954.

This case was submitted to us for decision under Rule 122, Tax Court Rules of Practice and Procedure. All the facts were, therefore, stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

Petitioners reported their income and deductions utilizing the cash receipts and disbursements method. They timely filed their Federal income tax return for their taxable year ended December 31, 1976, with the Philadelphia Service Center, Philadelphia, Pa. At the time they filed their petition herein, petitioners resided in Pittsburgh, Pa.

During their taxable year 1976, petitioners were each 25-percent shareholders in a Pennsylvania business corporation which, until its merger into another corporation in August of 1976, was known as P.G. Coal Co., Inc. (P.G. Coal). In January 1974, P.G. Coal elected to be taxed as a small business corporation under section 1372(a), I.R.C. 1954.

Until June 30, 1976, P.G. Coal was a general partner in a limited partnership known as P/G/P Associates and held an interest in such partnership which entitled it to 20 percent of the profits and losses incurred by P/G/P Associates during such year. On June 30, 1976, petitioners and one other shareholder of P.G. Coal replaced it as limited partners of P/G/P Associates, and thereafter each petitioner individually owned a 5-percent limited partnership interest in P/G/P Associates during the taxable year 1976.[1]

P/G/P Associates engaged in the recovery of coal from a coal

---

[1]While not specifically stipulated, presumably the other shareholder assumed the remaining 10 percent of the 20-percent interest.

waste pile in Allison Park, Hampton Township, Allegheny County, Pa. P/G/P Associates erected a coal plant at the site of the Wildwood Mine in Allison Park for the purpose of processing a waste pile created in the mining of the Wildwood Mine. P.G. Coal took over the operation of the coal plant in 1975 as the operating partner of P/G/P Associates and operated the plant until April 1976 when the venture was discontinued.

On May 7, 1976, P/G/P Associates sold its coal preparation plant, machinery, and equipment to River Processing, Inc., a Kentucky corporation, for a total consideration of $2 million. P/G/P Associates reported a gain on the sale of the coal preparation plant and related machinery and equipment in the amount of $995,551 on Form 4797, Supplemental Schedule of Gain and Losses, of its 1976 partnership return, Form 1065.

P/G/P Associates reported the above gain on the sale of its business assets as gain from the sale or exchange of property used in its trade or business under the provisions of section 1231. P/G/P Associates reported a total gain from the sale or exchange of property used in its trade or business under section 1231 on its 1976 partnership return of $954,741. As limited partners of P/G/P Associates, $48,024 of the gain was allocated to petitioners. Petitioners were also allocated $47,450 of the gain of P/G/P Associates as a result of their stock ownership in P.G. Coal which was, as noted, taxable as a subchapter S corporation. Petitioner Nathan K. Parker, Jr., was additionally allocated $6,282.12 of the P/G/P Associates gain as a result of his partnership interest in a partnership known as Kay, Richards & Co., which was a 10-percent partner in P/G/P Associates. Petitioners, therefore, reported a total net gain from the sale or exchange of property used in the trade or business of $101,755.12 on their 1976 income tax return by reason of the sale of the business assets of P/G/P Associates.[2]

Respondent determined in his notice of deficiency that petitioners were liable for a minimum tax under section 56 in the amount of $6,131.63 for 1976, which amount was computed with respect to one-half of petitioners' net capital gain for 1976 pursuant to section 57(a)(9)(A). Petitioners contest respondent's determination on the basis that gain produced under section

---

[2]Petitioners should have reported total net gain of $101,756.12.

1231 is not properly subject to the minimum tax under section 56.

The issue for our decision is not difficult to state: Is gain on the sale of assets used in a trade or business, which gain is treated as long-term capital gain solely by virtue of the application of section 1231, an item of tax preference subject to the section 56 tax? In arguing that section 1231 gain is not a tax preference item, petitioners rely upon section 1.1231-1(b)(2), Income Tax Regs., which says:

Sec. 1.1231-1 Gains and losses from the sale or exchange of certain property used in the trade or business.

(b) *Treatment of gains and losses.* * * *

\*  \*  \*  \*  \*  \*  \*

(2) * * *

If the gains to which section 1231 applies exceed the losses to which the section applies, the gains and losses are treated as long-term capital gains and losses and are subject to the provisions of parts I and II * * * , subchapter P, chapter 1 of the Code, relating to capital gains and losses.

They argue that, as section 1231 creates only what might be referred to as "deemed" capital gain, and as this regulation specifically states that this deemed capital gain shall be subject to sections 1201 through 1212, which sections do not include section 56, then there is the implication that section 1231 capital gain is not capital gain for purposes of section 56. Respondent replies that no such implication is reasonably to be found in that regulation and that section 1231 capital gain is still capital gain for section 56 purposes. While applauding petitioners on the ingenuity of their argument, we hold that respondent has the better of the debate.

Section 1231 read in relevant part as follows during the taxable year at issue:

SEC. 1231. PROPERTY USED IN THE TRADE OR BUSINESS AND INVOLUNTARY CONVERSIONS.

(a) GENERAL RULE.—If, during the taxable year, the recognized gains on sales or exchanges of property used in the trade or business * * * and capital assets held for more than 6 months into other property or money, exceed the recognized losses from such sales [or] exchanges, * * * such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. * * *

The statute is clear. If the recognized gains on the sale or exchange of section 1231 property exceed the recognized losses on the sale or exchange of such property, then such gains and

losses *"shall be considered* as gains and losses from *sales or exchanges of capital assets* held for more than 6 months." The regulation referred to by petitioners merely reaffirms the obvious fact that section 1231 capital gain or capital loss is subject to the general capital gains and capital loss computation provisions of the Code—as are all capital items whether "deemed" capital or not.[3] We can perceive no authority upon which we could base a holding that petitioners' long-term capital gain was long-term capital gain except for section 56 and 57 purposes.

Indeed, the policy behind section 56 supports the correctness of respondent's position. The minimum tax on tax preference items was enacted as part of the Tax Reform Act of 1969, Pub. L. 91–172, sec. 301(a), 83 Stat. 580, to assure that persons receiving income in excess of a certain amount, which income for one reason or another was not fully taxable because granted a "preference" by the Code, would pay at least a minimum of tax on this income.[4] One item of tax preference is long-term capital gain. Such gain is taxable only in part inasmuch as it is given the preferred treatment provided by sections 1201 and 1202. To assure that persons receiving long-term capital gain paid a minimum of tax, section 57 defines items of tax preference to include, with respect to individuals, an amount equal to the individual's section 1202 deduction.[5] We have already pointed

---

[3]Thus, the regulation says that sec. 1231 capital gains and losses "are treated as long-term capital gains and losses *and* are subject to [secs. 1201 through 1212]." (Emphasis added.)

[4]Prior to the 1969 Act, "individuals and corporations [did] not pay tax on a substantial part of their economic income as a result of the receipt of various kinds of tax-exempt income or special deductions." S. Rept. 91–552, 1st Sess. (1969), 1969–3 C.B. 423, 495.

[5]Prior to 1977, sec. 57(a)(9)(A) read as follows:

SEC. 57. ITEMS OF TAX PREFERENCE.

  (a) IN GENERAL.—For purposes of this part, the items of tax preference are—

    \*        \*        \*        \*        \*        \*        \*

  (9) CAPITAL GAINS.—

    (A) INDIVIDUALS.—In the case of a taxpayer other than a corporation, an amount equal to one-half of the amount by which the net long-term capital gain exceeds the net short-term capital loss for the taxable year.

(Pub. L. 94–455, sec. 1901(b)(33)(A), 90 Stat. 1800.)

  The connection between sec. 57(a)(9)(A) and sec. 1202 was rendered more explicit in 1978 when sec. 57(a)(9)(A) was amended to read as follows:

  (9) CAPITAL GAINS.—

    (A) INDIVIDUALS —In the case of a taxpayer other than a corporation, an amount equal to the net capital gain deduction for the taxable year determined under section 1202.

(Revenue Act of 1978, Pub. L. 95–600, sec. 402(b)(1), 92 Stat. 2868.)

out that section 1231 capital gain is explicitly made subject to section 1202 by the regulation under section 1231. Sec. 1.1231-1(b)(2), Income Tax Regs. Clearly, as section 1231 capital gain provides the very sort of preference, by way of deduction from gross income, at which section 56 was aimed, it would be anomalous for a court to grant the petitioners the exemptions they seek.

Finally, we note that the regulations under section 57 clearly dictate that section 1231 capital gain is to be treated as a section 57 tax preference item. Thus, the example given by section 1.57-1(i)(1), Income Tax Regs., shows that section 1231 gain is to be treated as a section 56 preference item.[6] As a reasonable interpretation of the law, this regulation must be upheld. See *Commissioner v. South Texas Lumber Co.*, 333 U.S. 496, 501 (1948). See also sec. 1.1222-1(f), Income Tax Regs.

Lastly, we note that petitioners raised, but explicitly refused to argue, the alleged unconstitutionality of the effective date provisions of Congress's amendments to section 56, which increased the tax under section 56.[7] We have already decided this issue adversely to petitioners. In our opinion, in *Buttke v. Commissioner*, 72 T.C. 677 (1979), on appeal (8th Cir., Oct. 15, 1979), we found the effective date provision of Congress's amendment to section 56 to be constitutional. See Tax Reform Act of 1976, Pub. L. 94–455, sec. 301(g)(1), 90 Stat. 1520, 1553. *Buttke v. Commissioner, supra* at 679, 680. See also *Estate of Kearns v. Commissioner*, 73 T.C. 1223 (1980). We have considered petitioners' other arguments and find them without merit.

*Decision will be entered for the respondent.*

---

[6]These regulations were proposed on Dec. 30, 1970, 35 Fed. Reg. 19757, and adopted on Sept. 11, 1978, effective for all taxable years after 1969, T.D. 7564, 1978–2 C.B. 19, 66.

[7]Thus, petitioners stated on brief: "Petitioners therefore respectfully decline to argue this issue and submit it for the sole purpose of not having waived it at a time when some other taxpayer may successfully establish the point, despite the overwhelming body of law to the contrary."