ALBERT G. WARFIELD III AND MARSHA WARFIELD, PETITIONERS *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 33146–83.    Filed February 7, 1985.

Albert G. Warfield III, pro se.
*Robert A. Miller*, for the respondent.

OPINION

COHEN, *Judge*: Respondent determined a deficiency of $10,151 in petitioners' Federal income taxes for 1981. Respondent also determined an addition to tax for negligence under section 6653(a)[1] in the amount of $507.55, but he has now conceded that addition to tax.

The issue to be determined is whether the Farmland Protection Policy set forth in 7 U.S.C. sec. 4201 precludes application of the alternative minimum tax of section 55 to

---

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954 as amended and in effect during the year in issue.

capital gains derived from transfer of farmland development rights to the Maryland Agricultural Land Preservation Foundation.

All of the material facts have been stipulated, and the stipulation· is incorporated herein by reference. Petitioners were residents of the State of Maryland at the time they filed their petition herein. They timely filed a joint individual income tax return for 1981 with the Internal Revenue Service Center at Philadelphia, Pennsylvania.

In 1955, petitioner Albert G. Warfield III (petitioner), inherited 229.88 acres of farmland in the State of Maryland. His basis in that land was $56,320.60. In 1980, he granted an easement of the development rights on that land to the Maryland Agricultural Land Preservation Foundation. The State of Maryland paid petitioner $75,000 in 1980 and $223,850 in 1981 for the easement.

On their joint return filed for 1981, petitioners reported long-term capital gain from the transfer of the development rights equal to the full amount received in that year. They paid $33,937 in "regular tax" at the time the return was filed. They did not pay any amount attributable to the alternative minimum tax imposed under section 55. They attached to the return a statement in which they asserted that the alternative minimum tax was not applicable to the gain realized from the transaction.

Petitioners contend that by adopting 7 U.S.C. sec. 4201, entitled "Farmland Protection Policy," Congress accorded special status to the relinquishment of development rights under an approved Federal or State farmland protection policy and that imposition of the tax under section 55 is inconsistent with and precluded by the following provision of 7 U.S.C. sec. 4203:

(b) Each department, agency, independent commission, or other unit of the Federal Government, with the assistance of the Department of Agriculture, shall, as appropriate, develop proposals for action to bring its programs, authorities, and administrative activities into conformity with the purpose and policy of this chapter.

Petitioners do not and cannot cite any express provision compelling the result for which they argue. Moreover, we are unpersuaded by their arguments as a matter of statutory

construction. The unambiguous express provisions of section 55 are controlling in this case.

Section 55, which imposed the so-called "alternative minimum tax" was added to the Code by section 421 of the Revenue Act of 1978, Pub. L. 95–600, 92 Stat. 2763, 2871. During the year in issue, its pertinent provisions were as follows:

SEC. 55. ALTERNATIVE MINIMUM TAX FOR TAXPAYERS OTHER THAN CORPORATIONS.

(a) ALTERNATIVE MINIMUM TAX IMPOSED.—In the case of a taxpayer other than a corporation, if—

(1) an amount equal to the sum of—

(A) 10 percent of so much of the alternative minimum taxable income as exceeds $20,000 but does not exceed $60,000 plus

(B) 20 percent of so much of the alternative minimum taxable income as exceeds $60,000 but does not exceed $100,000, plus

(C) 25 percent of so much of the alternative minimum taxable income as exceeds $100,000, exceeds

(2) the regular tax for the taxable year,

then there is imposed (in addition to all other taxes imposed by this title) a tax equal to the amount of such excess.

(b) DEFINITIONS.—For purposes of this section—

(1) ALTERNATIVE MINIMUM TAXABLE INCOME.—The term "alternative minimum taxable income" means gross income—

(A) reduced by the sum of the deductions allowed for the taxable year,

(B) reduced by the sum of any amounts included in income under section 86 or 667, and

(C) increased by an amount equal to the sum of the tax preference items for—

(i) adjusted itemized deductions (within the meaning of section 57(a)(1)), and

(ii) capital gains (within the meaning of section 57(a)(9)).

For purposes of subparagraph (A) (and in determining the sum of itemized deductions for purposes of subparagraph (c)(i)), a deduction shall not be taken into account to the extent such deduction may be carried to another taxable year.

(2) REGULAR TAX.—The term "regular tax" means the taxes imposed by this chapter for the taxable year (computed without regard to this section and without regard to the taxes imposed by sections 72(m)(5)(B), 402(e), 408(f), 409(c), and 667(b)) reduced by the sum of the credits allowable under subpart A of part IV of this subchapter (other than under sections 31, 39 and 43). For purposes of this paragraph, the amount of the credits allowable under such subpart shall be determined without regard to this section.

"Tax preference items" as used in section 55(b)(1)(C) and section 57(a)(9) specifically include as part of the alternative

minimum tax base income the 60-percent deduction for net capital gains under section 1202.

These provisions and their history were most recently analyzed in *Huntsberry v. Commissioner*, 83 T.C. 742 (1984). In that case, we said that, although we are no longer foreclosed from inquiring into legislative purposes where a statute is clear on its face,

we would require unequivocal evidence of legislative purpose before construing the statute so as to override the plain meaning of the words used therein. And this is particularly so in a case like the present, where we have a complex set of statutory provisions marked by a high degree of specificity. * * * [83 T.C. at 747–748.]

The legislative history of section 55 reveals no congressional intention or purpose whatsoever to exempt any form of capital gain, other than gain from the sale of a principal residence (section 57(a)(9)(D)), from the alternative minimum tax. See H. Rept. 95–1800 (Conf.) (1978), 1978–3 C.B. (Vol. 1) 521, 598–602.

We would certainly require specific evidence of legislative intent before we would conclude that a subsequently enacted nontax statute overrode specific provisions of a taxing statute. See *Bulova Watch Co. v. United States*, 365 U.S. 753, 757–758 (1961); *State Mutual Life Assur. Co. v. Commissioner*, 246 F.2d 319, 323–324 (1st Cir. 1957), affg. 27 T.C. 543 (1956). We find no such evidence, as neither the Farmland Protection Policy Act, 7 U.S.C. secs. 4201–4209, nor its legislative history, addresses the tax treatment of gain from the sale of farmland development rights. See Agricultural and Food Act of 1981, Pub. L. 97–98, secs. 1539–1549, 95 Stat. 1213, 1341–1344; H. Rept. 97–377 (Conf.) (1981), 1981 U.S. Code Cong. & Admin. News 2250, 2361–2362; S. Rept. 97–126 (1981), 1981 U.S. Code Cong. & Admin. News 1965, 2178–2180. Title 7, section 4203(b), relied on by petitioners and quoted above, obviously does not and could not require the Internal Revenue Service to adopt, administratively, regulations that would counteract express congressional enactments contained in the Internal Revenue Code. (By its terms, it only directs the development of *proposals*.)

Furthermore, retroactive effect will not be given a statute unless legislative intent to achieve that result is clear. See, e.g., *United States v. Magnolia Petroleum Co.*, 276 U.S. 160,

162 (1928). Congress' intention with respect to the Farmland Protection Policy Act is expressly to the contrary, however. The act provides that it does not become effective until 6 months from the date of enactment (December 22, 1981), or June 22, 1982, subsequent to the year in issue here. Pub. L. 97–98, sec. 1549, 95 Stat. 1213, 1344.

Petitioners present several other arguments that are equally unpersuasive. They claim that the alternative minimum tax provisions were not intended to apply to them because they paid a "substantial" regular tax. Their argument on this point, however, is based on legislative history and case law dealing with the "add on" minimum tax (formerly found in section 56), viz, *Wardas v. Commissioner,* T.C. Memo. 1983–137, and *Dupont v. United States,* 483 F. Supp. 588 (D. Del. 1980). As we said in *Huntsberry v. Commissioner, supra:*

Although the term "alternative minimum tax" is confusingly similar to the term "minimum tax" already on the books for some 9 years, it nevertheless relates to a separate and distinct tax. Indeed, during 1979 and for several years thereafter a noncorporate taxpayer was subject to *both* the minimum tax and the alternative minimum tax. It is important that the difference between these two taxes be kept clearly in mind. To some extent, they have similar, but nevertheless at least partly different, objectives, and they are differently structured and have independent spheres of operation. [83 T.C. at 748–749; fn. ref. omitted.]

Section 55(a) is expressly structured so that the alternative tax is paid only if and to the extent that the alternative tax computation exceeds the taxpayer's regular liability. This provision was designed to overcome problems of equity and disincentive to capital formation perceived with reference to the "add on" minimum tax and reflected in the arguments relied on by petitioners. See, e.g., S. Rept. 95–1263 (1978), 1978–3 C.B. (Vol. 1) 315, 499–500. Congress has obviously taken the steps that it perceived to be necessary to correct the situation, and courts "are not authorized to rewrite a statute because they might deem its effects susceptible of improvement." *Badaracco v. Commissioner,* 461 U.S. 925 (1983); see also *David Metzger Trust v. Commissioner,* 76 T.C. 42, 80 (1981), affd. 693 F.2d 459 (5th Cir. 1982); *Estate of Cowser v. Commissioner,* 80 T.C. 783, 788 (1983), affd. 736 F.2d 1168 (7th Cir. 1984).

Petitioners next argue that the fact that the transaction was a "one time deal" with the State of Maryland for the benefit of the general public should militate against categorization of their gain as a tax preference. There is no justification for creating such an exception to the express terms of the statute. See *Frederick Smith Enter. Co. v. Commissioner*, 167 F.2d 356, 359 (6th Cir. 1948); *Sullivan v. Commissioner*, 76 T.C. 1156, 1158 (1981), affd. by unpublished order (10th Cir. 1983).

Similarly without merit is an assertion made by petitioners that their transaction was not really a "sale" and that they did not have a "true" capital gain. Petitioners reported the transaction correctly, as a capital gain under section 1201, and claimed a deduction under section 1202. There is no tenable argument that the incorporation of section 1202 into sections 55 and 57 does not apply to this transaction. See also *Parker v. Commissioner*, 74 T.C. 29, 33 (1980); *Sullivan v. Commissioner*, 76 T.C. at 1159. If the transaction were not a "true" capital gain, there would be no justification for reducing the taxable amount by 60 percent of the net income received.

We have considered petitioners' other arguments and found them to be without support in law or logic. Petitioners assert repeatedly the inequity of subjecting them to the alternative minimum tax under section 55 and argue that the tax is contrary to congressional policy with respect to farmland. Presumably, however, the farmland policy should encourage farmland preservation regardless of the tax situation of the particular owner of farmlands. If Congress had wanted to add additional incentives to farmland protection in the nature of tax benefits, some specific exclusion, deduction, method of calculation, or credit could have been provided. There is no reason to assume that a tax incentive would take the form of exemption from the alternative minimum tax, the impact of which is designed to and does substantially vary depending on the structure of the taxpayers' other income, deductions, and credits. We will not assume that Congress did indirectly what it could have, but has not, done directly.

Petitioners also argue that they might have planned the transaction differently (as an installment sale) if they had known that they would be subject to the alternative minimum tax computation. Petitioners did use income averaging in computing the tax due with their return. They have thus had

the benefit of a statutory provision expressly intended to cover some of the concerns that they have expressed in this case. If they had entered into an installment sales transaction, they might not have had the benefit of income averaging. We have no basis for determining which method would have resulted in less tax in the long run, and it is not material to our decision. In any event, petitioners are bound by the tax consequences of the transaction as it actually occurred.

Because of respondent's concession with respect to the additions to tax,

*Decision will be entered for the respondent in the amount of the deficiency only.*