WILLIAM W. SPARROW AND LYDIA S. SPARROW,
PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 17238-83.      Filed May 5, 1986.

*W. Warren Sparrow*, pro se.
*Deborah L. Hildebran*, for the respondent.

PARKER, *Judge*: Respondent determined a deficiency in petitioners' 1980 Federal income taxes in the amount of $1,865.25. The sole issue involves the proper figure to be used as "regular tax" in determining whether or not petitioners are liable for the alternative minimum tax under section 55.[1]

### FINDINGS OF FACT

This case was submitted fully stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

Petitioners, husband and wife, resided in Winston-Salem, North Carolina, at the time they filed their petition in this case. They timely filed their joint 1980 Federal income tax return (Form 1040) with the Internal Revenue Service Center in Memphis, Tennessee.

On their 1980 return, petitioners reported adjusted gross income in the amount of $57,956 and income tax (after a political contributions credit) in the amount of $10,348. Petitioners qualified for income averaging and properly computed their 1980 income tax using the income averaging

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable year in question.

provisions of sections 1301-1305, to arrive at that tax figure of $10,348. On their Schedule D, Capital Gains and Losses, attached to their 1980 return, petitioners reported the following amounts:

| | |
|---|---:|
| Net long-term capital gain | $95,350 |
| 60% capital gain deduction | (57,210) |
| Capital gain includable in adjusted gross income | 38,140 |

Thus, $38,140 of petitioners' 1980 adjusted gross income of $57,956 was from long-term capital gain. With their return as filed, petitioners did not submit a Form 6251, Alternative Minimum Tax Computation.

In response to correspondence from the Memphis Service Center, petitioners, on August 11, 1981, mailed an Alternative Minimum Tax Computation (Form 6251) for 1980. On the Form 6251, petitioners correctly reported "alternative minimum taxable income"[2] in the amount of $100,853. Petitioners correctly calculated their tax under section 55(a)(1) (commonly referred to as the "tentative alternative minimum tax") in the amount of $12,213. However, on line 19 of the form, petitioners reported $13,329 as their "regular tax,"[3] rather than the $10,348 shown on their Form 1040. A footnote to this $13,329 figure describes it as "tax before income averaging." This amount was calculated under section 1 without using the income averaging provisions of sections 1301-1305. Consequently, petitioners reported no alternative minimum tax due, since such "regular tax" figure of $13,329 was higher than the tentative alternative minimum tax of $12,213.

On September 28, 1981, the Memphis Service Center recomputed petitioners' 1980 alternative minimum tax using as the regular tax the income tax in the amount of $10,348 petitioners reported on their 1980 return, which was calculated using the income averaging provisions of sections 1301-1305. This resulted in total taxes (income tax, self-employment tax, and alternative minimum tax, less credits) due in the amount of $13,086.25, which the Service Center

---

[2] See secs. 55(a)(1) and 55(b)(1).

[3] See secs. 55(a)(2) and 55(b)(2).

assessed rather than the total taxes petitioners reported for 1980 in the amount of $11,259.[4]

After the assessment, the Memphis Service Center notified petitioners that they owed additional taxes and interest in the amount of $1,927.41. By letters dated October 6, and December 17, 1981, petitioners objected to the assessment. On or about April 13, 1982, the Memphis Service Center abated $1,820 of the $13,086.25 that it had previously assessed. About 3 months after the abatement, petitioners' case was transferred at their request to the District Director in Greensboro, North Carolina. By a 30-day letter dated September 16, 1982, the District Director notified petitioners of an adjustment to their alternative minimum tax in the amount of $1,865.25. This alternative minimum tax of $1,865.25 amounts to the difference between petitioners' tentative alternative minimum tax of $12,213.25 and the $10,348 regular tax figure reported on line 47 of their Form 1040.[5]

Petitioners objected to the adjustment. They then requested a conference with the Group Manager, which was held on October 20, 1982. Thereafter, petitioners and the appeals officer corresponded but did not resolve the dispute. Petitioners requested a conference with the Greensboro Appeals Office. By letter dated January 21, 1983, the appeals officer scheduled a conference but petitioners cancelled it. By letter dated March 9, 1983, the appeals officer attempted to conclude the matter. Petitioners responded by a letter dated March 11, 1983, in which they complained about the administrative handling of their case.[6]

---

[4]Income tax (after a political contributions credit) of $10,348 plus self-employment tax of $911.

[5]However, respondent's computation of the alternative minimum tax was actually $1,866.26, due primarily to slight differences in rounding off figures. For example, respondent computed a tax figure of $10,371.99 instead of the $10,373 shown on line 37 of petitioners' Form 1040. Since the only adjustment in dispute is the alternative minimum tax and since respondent determined a deficiency of $1,865.25, we have not attempted to reconcile all of the minor rounding differences. Moreover, it appears it is simply a matter of whether the regular tax is $1.01 less and the alternative minimum tax $1.01 more or vice versa. Either way the deficiency would still be $1,865.25.

[6]We have included the administrative history of this case in our findings primarily for completeness. Although there seems to have been some confusion resulting in the abatement, petitioners do not allege any error regarding the abatement in their petition or on brief. In any event, this is a de novo proceeding. We must determine petitioners' tax based on the merits of the case and not on any previous record developed at the administrative level. *Greenberg's Express, Inc. v. Commissioner*, 62 T.C. 324, 327-328 (1974).

. By statutory notice of deficiency dated April 1, 1983, respondent determined that petitioners were liable for the alternative minimum tax and determined a deficiency of $1,865.25. See note 5 *supra.*

## OPINION

In 1980, petitioners received a large amount of net long-term capital gain and elected to use income averaging to reduce their tax for the year. They were qualified for income averaging and properly computed their tax using income averaging. However, in determining whether or not they were liable for the alternative minimum tax under section 55, petitioners used the figure for the amount of tax they would have owed for 1980 had they not elected to use income averaging. Petitioners say that this treatment is proper because otherwise they will not enjoy the benefits of income averaging to which they are entitled. Respondent says petitioners' method is contrary to the statutory language and purpose of section 55. We agree with respondent.

Section 1 imposes the Federal income tax on individuals at different rates based on their filing status and their taxable income. Section 5(b)(2) provides that "For limitation of tax where an individual chooses the benefits of income averaging, see section 1301." Section 1301[7] provides that if taxpayers meet certain requirements, "then the tax imposed by section 1 for the * * * year which is attributable to averagable income shall be" as calculated thereunder. Thus, section 1301 limits the tax that would otherwise be imposed by section 1. Here, petitioners properly computed and reported their 1980 income tax under sections 1 and 1301.

Section 55[8] imposes, in addition to all other taxes

---

[7]During 1980, sec. 1301 provided as follows:

SEC. 1301. LIMITATION ON TAX.

If an eligible individual has averagable income for the computation year, and if the amount of such income exceeds $3,000, then the tax imposed by section 1 for the computation year which is attributable to averagable income shall be 5 times the increase in tax under such section which would result from adding 20 percent of such income to 120 percent of average base period income.

[8]During 1980, sec. 55 in pertinent part provided as follows:

SEC. 55. ALTERNATIVE MINIMUM TAX FOR TAXPAYERS OTHER THAN CORPORA-
TIONS.

(a) ALTERNATIVE MINIMUM TAX IMPOSED.—In the case of a taxpayer other than a corporation,

imposed by the Code, an "alternative minimum tax" on noncorporate taxpayers. The first step in calculating the tax is determining "alternative minimum taxable income" under section 55(b)(1).[9] Here, there is no dispute that petitioners' alternative minimum taxable income is $100,853. Next, the sum of specified percentages of different levels of alternative minimum taxable income must be calculated pursuant to section 55(a)(1). The result of this computation is commonly referred to as "the tentative alternative minimum tax." Here, again, there is no dispute that petitioners' tentative alternative minimum tax is $12,213.25. Finally, the tentative alternative minimum tax is compared with the "regular tax" for the taxable year. If the tentative alternative minimum tax exceeds the regular tax, the excess is the alternative minimum tax due. Sec. 55(a). The dispute in this case is the proper figure to be used as petitioners' "regular tax."

During 1980, section 55(b)(2) defined the regular tax as "the taxes imposed by this chapter for the taxable year," with various deletions not here relevant.[10] On their 1980

---

if—
    (1) an amount equal to the sum of—
        (A) 10 percent of so much of the alternative minimum taxable income as exceeds $20,000 but does not exceed $60,000, plus
        (B) 20 percent of so much of the alternative minimum taxable income as exceeds $60,000 but does not exceed $100,000, plus
        (C) 25 percent of so much of the alternative minimum taxable income as exceeds $100,000, exceeds
    (2) the regular tax for the taxable year,
then there is imposed (in addition to all other taxes imposed by this title) a tax equal to the amount of such excess.

[9] Sec. 55(b)(1) defines the term as follows:

SEC. 55(b). DEFINITIONS.—For purposes of this section—

    (1) ALTERNATIVE MINIMUM TAXABLE INCOME.—The term "alternative minimum taxable income" means gross income—
        (A) reduced by the sum of the deductions allowed for the taxable year,
        (B) reduced by the sum of any amounts included in income under section 86 or 667, and
        (C) increased by an amount equal to the sum of the tax preference items for—
        (i) adjusted itemized deductions (within the meaning of section 57(a)(1)), and
        (ii) capital gains (within the meaning of section 57(a)(9)).
For purposes of subparagraph (A), a deduction shall not be taken into account to the extent such deduction may be carried to another taxable year.

[10] Sec. 55(b)(2) as it read in 1980, provided as follows:

SEC. 55(b). DEFINITIONS.—For purposes of this section—

    *        *        *        *        *        *        *

    (2) REGULAR TAX.—The term "regular tax" means the taxes imposed by this chapter for the taxable year (computed without regard to this section and without regard to the taxes

Alternative Minimum Tax Computation (Form 6251), petitioners properly computed and reported their alternative minimum taxable income ($100,853) and tentative alternative minimum tax ($12,213.25). However, instead of using the $10,348 tax they reported on their Form 1040 (calculated in part under the income averaging provisions of sections 1301-1305) as their regular tax, they used a figure calculated under section 1 without income averaging ($13,329). Thus, petitioners compared their tentative alternative minimum tax of $12,213.25 with that higher tax figure of $13,329 and concluded that no alternative minimum tax was due.

Respondent says that petitioners should have compared the $12,213.25 tentative alternative minimum tax with the $10,348 actual tax reported on their Form 1040, and that petitioners are liable for the excess of $1,865.25 as alternative minimum tax. See note 5 *supra*. That is the result that would have been reached if petitioners had followed the instructions on Form 6251. In another case addressing a different issue under section 55, we have noted that Form 6251 carefully tracks the statutory provisions. See *Huntsberry v. Commissioner*, 83 T.C. 742, 745 (1984). Respondent argues that because petitioners elected to limit their section 1 tax under the income averaging provisions of sections 1301-1305, they must use the amount so determined as their regular tax in computing their alternative minimum tax. We agree because we think the provisions of the relevant statutes are clear and require this result.

As noted above, section 55(b)(2) (now section 55(f)(2)) defines regular tax as "the taxes *imposed* by this chapter for the taxable year." (Emphasis added.) "This chapter" is Chapter 1 of Subtitle A of the Code. It encompasses sections 1 through 1397. Thus, the regular tax includes the taxes imposed by sections 1 through 1397; in particular, the tax *imposed* by section 1. However, section 1301 allows a taxpayer to reduce the tax on averagable income thereunder. The amount so determined under section 1301 thus becomes the tax *imposed* by section 1. Sec. 1301; note 7

imposed by sections 72(m)(5)(B), 402(e), 408(f), 409(c), and 667(b)) reduced by the sum of the credits allowable under subpart A of part IV of this subchapter (other than under sections 31, 39 and 43). For purposes of this paragraph, the amount of the credit allowable under section 33 shall be determined without regard to this section.

*supra.* This figure therefore is the regular tax and must be used in computing the alternative minimum tax.

Petitioners argue that section 55 does not contemplate use of the income averaging provisions in computing the alternative minimum tax. This case does not involve an attempt to use income averaging in computing the alternative minimum tax,[11] but use of income averaging in determining petitioners' regular tax. In defining regular tax, section 55(b)(2) (now section 55(f)(2)) does not specifically refer to section 1301. Section 55(b)(2) (now section 55(f)(2)) does, however, refer to the tax *imposed* by section 1 (by referring to the taxes imposed by "this chapter"), which, if the taxpayer elects income averaging, is determined in part under section 1301. And as noted above, the computation under section 1301 then becomes the tax imposed by section 1. Petitioners would have us read section 55(b)(2) (now section 55(f)(2)) as defining regular tax as the tax computed under section 1 *regardless* of the tax actually *imposed* thereunder. This we cannot do. The statutory language is "taxes imposed."

Petitioners also contend that their situation is precisely the type Congress intended to cover by the income averag-

---

[11]For a case where a taxpayer improperly tried to use income averaging in computing his alternative minimum tax, see *Okin v. Commissioner*, T.C. Memo. 1985-199. There, in computing his alternative minimum taxable income under sec. 55(b)(1), the taxpayer wanted to substitute components of his income averaging calculation in lieu of his actual gross income figure and thus in effect income average his alternative minimum tax as well as his regular tax. That taxpayer argued that because he properly elected to reduce his sec. 1 tax under the income averaging provisions, he was entitled to use a component of his income averaging calculation (30 percent of total base period income + 20 percent of averagable income), which he termed "adjusted average annual taxable income," as the starting point in computing his alternative minimum taxable income under sec. 55(b)(1). We held that the starting point for the computation is *gross income* as expressly provided by sec. 55(b)(1), and that the taxpayer's attempt to substitute something he called "adjusted average annual taxable income" for gross income was without statutory foundation. We stated that the method by which the sec. 1 tax is calculated has no impact on the computation of the alternative minimum tax and that the petitioner's use of the income averaging provisions to calculate his sec. 1 tax was irrelevant to his computation of the alternative minimum tax. Those statements, however, referred to the computation of the alternative minimum taxable income and the tentative alternative minimum tax under sec. 55, not to the regular tax that is computed without regard to sec. 55. As we succinctly characterized the relationship (or lack thereof) between the alternative minimum tax and the regular tax:

"The alternative minimum tax is imposed and computed independently of the section 1 tax; the only relationship between these two taxes is that only the excess, if any, of the tentative alternative minimum tax over the taxpayer's "regular tax" (essentially the section 1 tax, with certain modifications as provided in section 55(b)(2)) is imposed as the alternative minimum tax. * * * " [*Okin v. Commissioner*, T.C. Memo. 1985-199, 49 T.C.M. 1315, 1319, 54 P-H Memo T.C. par. 85,199, at 85-863.]

ing provisions and that imposition of the alternative minimum tax is unfair because it denies them the benefits of income averaging. Petitioners clearly qualified for income averaging. However, this is not the proper forum for petitioners' complaint that the alternative minimum tax unfairly denies them the benefits thereof. We must apply the statute as written and as written it applies to petitioners. We are not authorized to rewrite a statute merely because we may think its effect susceptible of improvement. *Badaracco v. Commissioner*, 464 U.S. 386, 398 (1984); *Warfield v. Commissioner*, 84 T.C. 179, 183 (1985), and cases cited therein. Moreover, the section 1 tax petitioners would owe if they had not elected income averaging ($13,329) is greater than their section 1 tax as limited by section 1301 ($10,348) *plus* their alternative minimum tax liability ($1,865.25) or a total of $12,213.25. Thus, the alternative minimum tax diminishes but does not deny petitioners the benefits of income averaging.

Despite our determination that the statutory framework is clear on its face, we may nevertheless examine its legislative purpose. *Warfield v. Commissioner*, 84 T.C. at 182; *Huntsberry v. Commissioner*, 83 T.C. at 747, and cases cited therein. Unfortunately for petitioners, our review of the legislative history behind section 55 reveals no indication that Congress intended the result petitioners seek.

The alternative minimum tax was added by the Revenue Act of 1978[12] in conjunction with the decision to exempt the capital gain deduction under section 1202 from the add-on minimum tax under section 56. The congressional intent behind these changes was to remove the disincentives to capital formation associated with the add-on minimum tax on capital gains preferences, yet ensure that individuals having high incomes but paying low regular taxes would still be subject to a reasonable amount of tax on their capital gains.[13] In fact, the anticipated result of the alternative minimum tax was that "every individual will pay at least a minimum amount of tax with respect to large capital gains." H. Rept. 95-1445 (1978), 1978-3 C.B. (Vol. 1)

[12]Pub. L. 95-600, 92 Stat. 2763.

[13]For an exhaustive review of the legislative history of sec. 55, see *Huntsberry v. Commissioner*, 83 T.C. 742 (1984).

181, 296. See S. Rept. 95-1263 (1978), 1978-3 C.B. (Vol. 1) 315, 499-500; Staff of Joint Committee on Taxation, 95th Cong., 2d Sess., General Explanation of the Revenue Act of 1978, at 261-262 (1979) quoted in 4 B. Bittker, Federal Taxation of Income, Estates and Gifts, par. 111.3.12, at 111-67 — 111-68 (1981). Almost two-thirds of petitioners' adjusted gross income for 1980 was capital gain. Thus, this is precisely the type of situation that Congress intended to reach with the alternative minimum tax. We sustain respondent's determination.

To reflect the foregoing,

*Decision will be entered for the respondent.*