WILLIAM A. BROWN AND ANN S. BROWN, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6072-88.          Filed December 19, 1989.

*William A. Brown,* pro se.
*Patricia Henry,* for the respondent.

OPINION

RAUM, *Judge:* The Commissioner determined an $11,117
income tax deficiency for 1984 against petitioners, husband
and wife. The deficiency is attributable entirely to the
alternative minimum tax. At issue is whether the capital
gain deduction in this case is a tax preference where, as
here, it is based upon the capital gain portion of the
lump-sum distribution received by the husband from his
employer upon retirement, and, if it is held to be a tax
preference, whether the Commissioner in any event properly
computed the alternative minimum tax. The husband will be
referred to hereinafter as petitioner. The case was submitted
on the basis of a stipulation of facts, one sentence of which
respondent refused to agree to, but which the trial judge
permitted petitioner to place before the Court thereafter ex

parte as his unagreed "Statement in Lieu of Stipulation."[1] Regardless of how that statement may properly be taken into account as part of the record, it is in our view either irrelevant or represents merely a conclusion of law and will not affect the outcome of the case.

In November 1983, at age 62, petitioner retired from Brown & Root, Inc. On January 19, 1984, he received a $344,505.97 lump-sum distribution from the Brown & Root, Inc. Employees' Retirement and Savings Plan, a qualified retirement plan under section 401 of the Internal Revenue Code.[2] The distribution represented his entire interest in the plan, and consisted of $30,199.69 nontaxable return of his own contribution to "regular savings account" and $314,306.28 taxable distribution comprising "employer profit sharing contribution and increase thereof, super savings, and increase of employee contribution to regular saving account." Although petitioners had other items of taxable income in 1983, no tax would have been due as a result of various deductions if there had been no lump-sum distribution.

To determine how that $314,306.28 taxable portion of the distribution is to be treated, we turn first to section 402(a)(2),[3] which provides:

SEC. 402(a). TAXABILITY OF BENEFICIARY OF EXEMPT TRUST.—

\* \* \* \* \* \* \*

(2) CAPITAL GAINS TREATMENT FOR PORTION OF LUMP SUM DISTRIBUTION.—In the case of an employee trust described in section 401(a), which is exempt from tax under section 501(a), so much of the total taxable amount (as defined in subparagraph D of subsection (e)(4)) of a lump sum distribution as is equal to the product of such total taxable amount multiplied by a fraction—

---

[1] Trial memoranda had previously been submitted by the parties, and the trial judge agreed to accept revised or amended trial memoranda as setting forth the arguments of the parties. Petitioners presented their revised trial memorandum at the hearing, and the Government submitted its amended trial memorandum the following day. Neither party requested permission to file briefs, nor has either party requested permission to respond to the foregoing revised or amended trial memorandum of its opponent.

[2] Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the year in issue.

[3] Sec. 402(a)(2) was amended by the Tax Reform Act of 1984, sec. 1001(b)(3) of Pub. L. 98-369, 98 Stat. 1011. This amendment was effective only for property acquired after June 22, 1984, and before Jan. 1, 1988, and is thus inapplicable here. Sec. 402(a)(2) was subsequently repealed by sec. 1122(b)(1)(A) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2466.

(A) the numerator of which is the number of calendar years of active participation by the employee in such plan before January 1, 1974, and

(B) the denominator of which is the number of calendar years of active participation by the employee in such plan,

shall be treated as a gain from the sale or exchange of a capital asset held for more than 1 year. * * *

The parties have stipulated that petitioner participated in the plan "10 plan years before 1974 and 10 plan years after 1973, or 50% before 1974 and 50% after 1973." Accordingly, precisely one-half of the taxable $314,306.28, or $157,153.14, must be "treated as a gain from the sale or exchange of a capital asset," as required by section 402(a)(2).

In their 1984 joint return, petitioners therefore correctly reported the $157,153.14 capital gain portion of the distribution on Schedule D ("Capital Gains and Losses"). After combining that amount with a capital loss from a wholly unrelated transaction, Schedule D showed a net long-term capital gain of $150,283.01. However, 60 percent of that long-term capital gain, or $90,169.80 was deducted as nontaxable, and only the remaining 40 percent, or $60,113.20, was therefore entered by petitioners on line 13 of the first page of their 1040 return as one of the items of income taken into account in computing their adjusted gross income and ultimately their taxable income. The resulting tax, determined in the basis of petitioners' entire adjusted gross income, exemptions, and deductions, was entered on line 38 of Form 1040.

The $157,153.14 ordinary income component of the distribution was not included in petitioners' adjusted gross income at all, and played no part in the computation of the tax entered on line 38. However, it was separately taken into account on Form 4972 in the computation of the amount of "separate tax" imposed thereon by the highly complicated provisions of section 402(e).[4] The "separate

---

[4] SEC. 402(e). TAX ON LUMP SUM DISTRIBUTIONS.—

(1) IMPOSITION OF SEPARATE TAX ON LUMP SUM DISTRIBUTIONS.—

(A) SEPARATE TAX.—There is hereby imposed a tax (in the amount determined under subparagraph (B)) on the ordinary income portion of a lump sum distribution.

(B) AMOUNT OF TAX.—The amount of tax imposed by subparagraph (A) for any taxable year shall be an amount equal to the amount of the initial separate tax for such taxable year

tax" is computed by a "Special 10-year Averaging Method," on Form 4972, which tracks the provisions of section 402(e). It is then entered on line 39 of Form 1040 which calls for the reporting of "Additional Taxes," including among others the tax shown on Form 4972.

The $46,556.75 total tax shown on petitioners' 1040 for 1984 was paid by them. Thereafter, the Commissioner found an arithmetic error in petitioners' return, and as a consequence they paid an additional $1,521.27 tax, bringing the total paid by them up to $48,078.02. The parties have stipulated that "Of the $48,078.02 tax paid for 1984, $36,905.00 was attributable to the Ordinary Income portion of the Lump-Sum Distribution, and $11,173.02 was attributable to the Capital Gain portion of the Lump-Sum Distribu-

---

multiplied by a fraction, the numerator of which is the ordinary income portion of the lump sum distribution for the taxable year and the denominator of which is the total taxable amount of such distribution for such year.

(C) INITIAL SEPARATE TAX.—The initial separate tax for any taxable year is an amount equal to 10 times the tax which would be imposed by subsection (C) of Section 1 if the recipient were an individual referred to in such subsection and the taxable income were an amount equal to the zero bracket amount applicable to such an individual for the taxable year plus one-tenth of the excess of—

(i) the total taxable amount of the lump sum distribution for the taxable year, over
(ii) the minimum distribution allowance.

(D) MINIMUM DISTRIBUTION ALLOWANCE.—For purposes of this subparagraph, the minimum distribution allowance for the taxable year is an amount equal to—

(i) the lesser of $10,000 or one-half of the total taxable amount of the lump sum distribution for the taxable year, reduced (but not below zero) by
(ii) 20 percent of the amount (if any) by which such total exceeds $20,000.

(E) LIABILITY FOR TAX.—The recipient shall be liable for the tax imposed by this paragraph.

\* \* \* \* \* \* \*

(4) DEFINITIONS AND SPECIAL RULES.—

\* \* \* \* \* \* \*

(E) ORDINARY INCOME PORTION.—FOR PURPOSES OF THIS SECTION, THE TERM "ORDINARY INCOME PORTION" MEANS, WITH RESPECT TO A LUMP SUM DISTRIBUTION, SO MUCH OF THE TOTAL TAXABLE AMOUNT OF SUCH DISTRIBUTION AS IS EQUAL TO THE PRODUCT OF SUCH TOTAL TAXABLE AMOUNT MULTIPLIED BY A FRACTION—

(i) the numerator of which is the number of calendar years of active participation by the employee in such plan after December 31, 1973, and
(ii) the denominator of which is the number of calendar years of active participation by the employee in such plan.

\* \* \* \* \* \* \*

(L) ELECTION TO TREAT PRE-1974 PARTICIPATION BY THE EMPLOYEE AS POST-1973 PARTICIPATION.—For purposes of subparagraph (E), subsection (a)(2), and section 403(a)(2), if a taxpayer elects (at the time and in the manner prescribed by the Secretary), all calendar years of an employee's active participation in all plans in which the employee has been an active participant shall be considered years of active participation by such employee after December 31, 1973. An election made under this subparagraph, once made, shall be irrevocable. \* \* \*

tion by the Brown & Root Inc., Employees' Retirement and Savings Plan."

Petitioners do not deny their liability for the $48,078.02 paid by them. They challenge only the $11,117 deficiency determined by the Commissioner which represents the alternative minimum tax calculated by him. The alternative minimum tax thus determined grows out of the Commissioner's treatment of the $90,169.80 capital gain deduction (shown on Schedule D) as a tax preference item.

Section 55(a) of the Code imposes the alternative minimum tax, in the computation of which it becomes necessary to compute the "alternative minimum taxable income" (sec. 55(a)(1)). The term "alternative minimum taxable income" is defined in section 55(b)[5] to mean the taxpayer's adjusted gross income as further adjusted by specified modifications, one of which, in section 55(b)(2),[6] requires an increase "by the amount of items of tax preference." The items of tax preference are listed in section 57(a), and the only one involved herein is described in section 57(a)(9)(A) as follows:

(9) CAPITAL GAINS.—
    (A) INDIVIDUALS.—In the case of a taxpayer other than a corporation, an amount equal to the net capital gain deduction for the taxable year determined under section 1202.

The $90,169.80 capital gain deduction claimed by petitioners on Schedule D attached to their 1040 return as a part thereof was certainly taken under the authority of section 1202(a) which provides:

SEC. 1202. DEDUCTION FOR CAPITAL GAINS.
    (a) IN GENERAL.—If for any taxable year a taxpayer other than a corporation has a net capital gain, 60 percent of the amount of the net capital gain shall be a deduction from gross income.

That $90,169.80 was 60 percent of petitioners' $150,283.01 net capital gain, and only the remaining 40 percent, or $60,113.20, was entered by them on their 1040 as an item of income to be taken into account in determining the amount of their regular income tax. They nevertheless argue that the $90,169.80 deduction should not be treated as a "tax preference," notwithstanding that they had the benefit of

---

[5]The relevant provisions are now contained in sec. 55(b)(2).
[6]The relevant provisions are contained in sec. 55(b)(2)(B).

the favorable treatment provided by section 1202 as incorporated in section 57(a)(9)(A). And they contend that in any event, even if the capital gain deduction is a tax preference, the proper computation of the alternative minimum tax would still result in a zero tax liability. We proceed to consider each of these points.

1. *The capital gain deduction as a tax preference.*

Petitioners' argument in substance is that section 402 provides a comprehensive plan for favorable tax treatment of, inter alia, a lump-sum retirement distribution to an employee of the balance of his account in a qualified plan; that the distribution is divided into an "ordinary income portion" and a "capital gains portion" based arbitrarily on the beneficiary's respective years of participation in the plan roughly before and after January 1, 1974; and that the favorable tax treatment for such distributions intended by Congress is achieved by provision for the computation of a "separate tax" on the ordinary income portion by a special 10-year averaging method, and by provision in section 402(a)(2) that the capital gain portion shall be *"treated as* a gain from the sale or exchange of a capital asset." (Emphasis by petitioners.) In short, they argue that the artificial capital gain is merely to be "treated" as capital gain for the purpose of the 60-percent capital gain deduction, and that—

If it were the intent of Congress to impose another tax, in addition to the tax on capital gains on the pre-1974 portion of the lump-sum distribution, Congress would have included an express provision for such additional tax in the comprehensive taxing plan set forth in Section 402 I.R.C. or, at least, Congress would have added such portion of the lump-sum distribution to the list of tax preference items in Section 57.

However, in the latter respect, it may be noted that Congress, in section 57(a)(9)(D), provided an exception to the capital gain deduction of section 57(a)(9)(A), namely with respect to the gain on sale of the taxpayer's principal residence, an exception that petitioners took advantage of in this very case. No other exception is set forth anywhere in section 57 or in any other provision of the Code. In the circumstances, it may be more persuasively argued, as does the Government, that the gain on sale of a residence was

the only exception intended by Congress, since, had it intended any other, it would similarly have been specifically stated in the Code. We agree.

Substantially the same argument made by petitioners was made and rejected in *Sullivan v. Commissioner,* 76 T.C. 1156 (1981), affd. by unpublished order (10th Cir. 1983). Cf. *Warfield v. Commissioner,* 84 T.C. 179 (1985). Petitioners have not attempted to deal with *Sullivan,* or even to indicate that they are aware of it, notwithstanding that it was cited by the Government.[7] Although this ostrich-like approach might not ordinarily be particularly surprising in pro se litigation, the situation in this case is quite different since petitioner-husband is a professor and lawyer and has in general otherwise vigorously and ably presented his position in a sophisticated manner. We adhere to *Sullivan,* and find no need to restate the Court's reasoning therein. The $90,169.80 capital gain deduction is a tax preference item and must be taken into account in the computation of the alternative minimum tax.

We add one further observation. The capital gain deduction on Schedule D is equal to 60 percent of the composite of *all* eligible capital gains and losses, and is not identified with any particular component thereof. While it is true that the capital gain portion of the lump-sum distribution in this case was fortuitously or atypically the only capital gain shown on Schedule D by petitioners, it was nevertheless offset in part by a capital loss in respect of an entirely different transaction, and the 60-percent deduction of $90,169.80, the tax preference herein, was the result of applying that percentage to the composite of the two items.

## 2. *Computation of the alternative minimum tax.*

As previously indicated, the alternative minimum tax here involved is imposed by section 55(a), which provides:

SEC. 55. ALTERNATIVE MINIMUM TAX FOR TAXPAYERS OTHER THAN CORPORATIONS.

(a) TAX IMPOSED.—In the case of a taxpayer other than a corporation, there is imposed (in addition to any other tax imposed by this subtitle) a tax equal to the excess (if any) of—

---

[7]As indicated in note 1, *supra,* petitioners did not seek to respond to the Government's amended trial memorandum, in which *Sullivan* was relied upon.

(1) an amount equal to 20 percent of so much of the alternative minimum taxable income as exceeds the exemption amount, over
(2) the regular tax for the taxable year.

The only disagreement between the parties as to section 55(a)(1) was whether the $90,169.80 capital gain must be taken into account as a tax preference under section 55(b)(2) in the computation of petitioners' "alternative minimum taxable income"—an issue that we decided against them above. Thus, after taking the disputed tax preference into account, the "alternative minimum taxable income" becomes $151,452 from which the $40,000 exemption (applicable to joint returns pursuant to section 55(f)(1)(A)) is subtracted, and 20 percent of the difference of $111,452, namely, $22,290, is the amount properly computed under section 55(a)(1). We do not understand petitioners to object to the $22,290 figure called for by section 55(a)(1), except to the extent that it reflects the tax preference already decided against them.

The crux of petitioners' complaint about the computation of the alternative minimum tax involves only section 55(a)(2), which fixes the alternative minimum tax as an amount equal to the "excess (if any)" of the section 55(a)(1) amount ($22,290) over the "regular tax for the taxable year." At issue is the amount of the "regular tax."

The Government argues that the regular tax is $11,173, i.e., that portion of the $48,078.02 total tax paid by petitioners that the parties have stipulated to be "attributable * * * to the Capital Gain portion of the Lump-Sum Distribution." Petitioners on the other hand contend that the regular tax is the total $48,078.02 paid by them which includes the remaining $36,905 stipulated to be "attributable to the Ordinary Income portion of the Lump-Sum Distribution." We hold that the Government's position must be sustained.

Bearing in mind that petitioners would not have incurred any 1984 income tax liability in the absence of the lump-sum distribution, the stipulation of the parties can mean only that the $11,173 portion of the total tax reflects the amount of the total tax computed without taking into account the ordinary income portion of the lump-sum distribution. In short, all the items of income, deductions,

and credit applicable to petitioners (including 40 percent of the net capital gain) were responsible for the $11,173 portion of their total tax. The remaining $36,905, by parity of reasoning, must rest upon the computation of the "separate tax" on the ordinary income portion of the lump-sum distribution. Unless the stipulation were so understood the two components of that stipulation ($11,173 and $36,905) could not possibly add up to the total $48,078 (rounded to the nearest dollar) paid by them, which did in fact take into account all of petitioners' items of income, deduction, and credit for 1984. Our examination of all the materials in the record satisfies us that such is the case.

If the $11,173 is to be treated as the regular tax, the Commissioner's determination of the $11,117 deficiency based solely on the alternative minimum tax must be sustained. That tax is imposed by section 55(a) on the "excess (if any)" of the $22,290 computed under section 55(a)(1) "over" the "regular tax" under section 55(a)(2). Here that excess is equal precisely to the $11,117 deficiency determined by the Commissioner.

On the other hand, if petitioners are correct in their contention that the total tax of $48,078.02 paid by them is the regular tax, they would obviously not owe any alternative minimum tax. In that situation, there would be no "excess" of the $22,290 "over" the "regular tax" under section 55(a)(2).

The difficulty with petitioners' position, however, is that the term "regular tax" is defined in section 55(f)(2)[8] as follows:

(2) REGULAR TAX.—The term "regular tax" means the taxes imposed by this chapter for the taxable year (computed without regard to this section and without regard to the taxes imposed by sections 47(a), 72(m)(5)(B), 72(q), 402(e), 408(f), and 667(b)). * * * [Emphasis supplied.]

---

[8]Sec. 55(f) was not reenacted as part of the Code by the Tax Reform Act of 1986, sec. 701(a) of Pub. L. 99-514, 100 Stat. 2320, but sec. 701(a) of the 1986 Act amended sec. 55(c)(1) of the Code to provide:

(c) REGULAR TAX.—

(1) IN GENERAL.—For purposes of this section, the term "regular tax" means the regular tax liability for the taxable year (as defined in section 26(b)) reduced by the foreign tax credit allowable under section 27(a). Such term shall not include any tax imposed by section 402(e) and shall not include any increase in tax under section 47.

To the extent relevant in this case that definition explicitly excludes "taxes imposed by * * * [section] 402(e)" from the "taxes imposed by this chapter" (i.e., normal income taxes and surtaxes). But the section 402(e) tax in this case is the "separate tax" reflected in the $36,905 that was paid by petitioners on the ordinary income portion of the lump-sum distribution as part of their total tax payment of $48,078.02. Upon excluding that separate tax from the computation of the regular tax we are left with $11,173, the amount treated by the Government as the regular tax. We find no escape from this conclusion, notwithstanding some confusing contentions made by petitioners that would appear to rest in part perhaps on questionable equitable considerations. The deficiency was correctly determined by the Commissioner.

*Decision will be entered for the respondent.*