MARYHELEN BETTNER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bettner v. Commissioner
Docket No. 1529-90
United States Tax Court
T.C. Memo 1991-453; 1991 Tax Ct. Memo LEXIS 502; 62 T.C.M. (CCH) 753; T.C.M. (RIA) 91453; September 18, 1991, Filed *502 Decision will be entered under Rule 155. Maryhelen Bettner, pro se. Mark E. Menacker, for respondent. BEGHE, Judge. BEGHE
MEMORANDUM OPINION Respondent determined an $ 11,504 deficiency in petitioner's 1986 Federal income tax. After giving effect to a concession by respondent, the sole issue is whether petitioner is liable, by reason of the net long-term capital gain she realized during the taxable year, for the alternative minimum tax (AMT) imposed by section 55. [1] The facts have been stipulated in full and are so found. Petitioner Maryhelen Bettner resided in Costa Mesa, California, when she filed her petition in this case. Except for the gains realized on the sales of an apartment building and corporate shares during the taxable year, petitioner might well be called a "small taxpayer," as she in effect characterizes herself. The bulk of her income is provided by a disability retirement pension, which amounted *503 to $ 16,052.27 for the taxable year 1986 (excludable from gross income to the extent of $ 14,082.12), and lesser amounts on the order of $ 10,000 per year (fully excludable from gross income) during 1987, 1988, and 1989, and she occasionally earns small amounts of wage income as an office temporary. In computing her 1986 Federal income tax liability, petitioner used income averaging (Schedule G), which resulted in the $ 2,516.80 tax liability shown on her return as filed. Her Federal income tax returns for 1987, 1988, and 1989 show Federal income tax liabilities of zero, $ 604, and zero, respectively. Petitioner has two dependent children and qualifies as a head of household. The net long-term capital gain reported by petitioner on Schedule D of her 1986 return amounted to $ 110,612.26. Of this gain, $ 8,319.58 was attributable to sales of corporate shares and $ 102,292.68 to sale of the apartment building. Form 4797 (Gains and Losses From Sales or Exchanges of Assets Used in a Trade or Business and Involuntary Conversions) filed with petitioner's return showed that she acquired the apartment building for $ 132,055.96 in 1977 and sold it for $ 199,011.28 in 1986. Depreciation *504 allowed amounted to $ 35,337.36, resulting in an adjusted basis of $ 96,718.60 and a gain on the sale in the amount of $ 102,292.68. Petitioner claimed the 60-percent long-term capital gain deduction in accordance with section 1202 in the amount of $ 66,367.36. Petitioner did not file Form 6251 (Alternative Minimum Tax Computation) with her return. On October 24, 1989, respondent timely mailed petitioner a notice of deficiency for 1986, determining that the long-term capital gain deduction shown on Schedule D was a tax preference item subject to AMT. Respondent determined petitioner's AMT to be $ 11,424, the amount by which her tentative minimum tax exceeded the regular tax shown on her return as filed. Respondent does not now challenge the omission, inclusion, or correctness of any item of income, deduction, or credit on petitioner's return. Section 55(a) imposes a tax equal to the excess of an amount equal to 20 percent of so much of the alternative minimum taxable income as exceeds the exemption amount over the regular tax for the taxable year. Section 55(f)(1)(B) allows an exemption amount of $ 30,000 for an unmarried individual. Section 55(b) defines alternative minimum *505 taxable income as adjusted gross income, decreased by certain items not relevant here, and increased by tax preference items. Section 57(a)(9)(A) provides that for individuals tax preference items include the net capital gain deduction under section 1202 for the taxable year. Petitioner argues that she is not subject to the AMT because of her understanding of its intent. In her brief, petitioner makes the point that a "literal interpretation and strict application [of sections 55 and 57 would] produce an outcome grossly inconsistent with congressional intent." In petitioner's view, the AMT was enacted to extract tax revenue from high-income individuals who had in the past escaped the payment of income taxes through tax loopholes and sheltering schemes. She refers to $ 200,000 as a benchmark in the literature for the high-income taxpayers to which the AMT was intended to apply, and further states that there were only about 88,000 taxpayers subject to the AMT in 1988. Petitioner finds it incredible that the AMT could apply to her situation, in which the high gross income she reported in 1986 was what she characterizes as a once in a lifetime aberration, with her adjusted gross *506 income falling "below the poverty or quality-of-life level" in the years before and after 1986. The legislative history of the minimum tax [2] provisions contained in the Tax Reform Act of 1969, Pub. L. 91-172, 83 Stat. 487, displays congressional concern over the inequity of high-income taxpayers' paying virtually no Federal income tax while those with modest incomes were bearing a disproportionately heavier tax burden. The Senate Finance Committee noted that a large number of high-income taxpayers were paying little or no income tax by taking advantage of tax preferences in the law. S. Rept. 91-552 (1969), 1969-3 C.B. 423, 431. Congress enacted the minimum tax in an effort to correct this inequity. See generally 4 B. Bittker, Federal Taxation of Income, Estates and Gifts, par. 111.3.11, pp. 111-60 to 111-61 (1981) (discussing the legislative history of the minimum tax). *507 While it is apparent that the congressional purpose in enacting the minimum tax was to assure that the wealthy would pay their fair share of taxes, the statute by no means discriminated between the wealthy and the nonwealthy. Although it was primarily the wealthy who took advantage of tax preferences, the Senate Finance Committee stated further that reforming the tax law by enacting the minimum tax was necessary "to be certain that those with substantially the same incomes are paying substantially the same tax." S. Rept. 91-552, supra, 1969-3 C.B. at 431. Although petitioner is not included in the category of individuals who ordinarily take advantage of or derive benefit from tax preferences, she was a member of that group during the taxable year in question. Although an impetus of the original minimum tax legislation enacted in 1969, which continued with the passage of the AMT in 1978, was to require high-income individuals to pay at least some tax when they availed themselves of specified tax preference items, there is no indication in the language of the statute or the explanations in the legislative history that there was to be an exception for the nonwealthy. *508 Huntsberry v. Commissioner, 83 T.C. 742 (1984), illustrates this Court's long-standing view that "atmospheric language" in the legislative history about the general purpose of the AMT will not change the meaning of otherwise explicit statutory words. [3] In Huntsberry, a straightforward application of the AMT rules left the taxpayer with an AMT liability, even though he had no tax preferences as such, because the jobs tax credit and other credits usable against regular tax liability were not usable in computing AMT. The taxpayer resisted the imposition of AMT on the grounds that the committee reports accompanying the Revenue Act of 1978 indicated that the AMT was to be imposed on tax preferences. Although the Court agreed that there were repeated references in the legislative history to "tax preferences" and that one of the goals of the new tax was to encourage "capital formation and economic growth," a goal that was concerned with the capital gains tax preference, it held that these general expressions of congressional intent could not be read to override the specific rules of the Code for computing AMT liability. Huntsberry v. Commissioner, supra at 749-751. *509 This Court, in a variety of circumstances, has rejected taxpayers' arguments that items defined as capital gain by statute were not tax preferences within the meaning of the minimum tax and AMT provisions. In Hellermann v. Commissioner, 77 T.C. 1361 (1981), we held that even if the taxpayer's gain from the sale of real estate was due to inflation, it was still capital gain, which is a tax preference item, and thus subject to the minimum tax. In Sullivan v. Commissioner, 76 T.C. 1156 (1981), we held that lump-sum distributions from qualified pension and profit-sharing plans, defined as capital gain by section 402(a)(2), were tax preference items, clearly subject to the minimum tax. In Parker v. Commissioner, 74 T.C. 29, 33 (1980), *510 we explicitly held that section 1231 gain, such as petitioner's gain on the sale of the apartment building, is capital gain within the meaning of section 57(a)(9). In so doing, we recognized that long-term capital gain is a tax preference item, with such gain being taxable "only in part inasmuch as it is given the preferred treatment provided by sections 1201 and 1202." The taxpayer in Short v. Commissioner, T.C. Memo 1980-225, made an argument similar to petitioner's here, and we rejected it. The taxpayer there, upon the death of her sister, received a lump-sum distribution of $ 59,379.79 from a qualified retirement plan, which was taxed as long-term capital gain for Federal income tax purposes and was also subject to New York estate tax. The taxpayer had spent all the money that she received in the lump-sum payment, not realizing she was subject to the minimum tax in effect during 1976. While we acknowledged that Congress "was addressing the situation where individuals * * * were earning large sums of money, but because of certain preferential items, were paying little or no tax," we concluded that it is clear that an exception *511 is not carved out of the statute for circumstances such as these, where the taxpayer receives a large lump sum payment in 1 year that is reportable as long term capital gain. Section 56(a) unambiguously states that the minimum tax shall be imposed on tax preference items, where applicable, to the income of every person. Although we sympathize with petitioner's honesty and sincerity, we are not as a Court authorized to relieve someone of a tax liability merely because they are unable to pay the deficiency. Accordingly, we hold that one-half of the net capital gain for 1976 which was reported by petitioner is an item of tax preference, subject to the minimum tax. [Short v. Commissioner, T.C. Memo 1980-225, 1980 T.C. Memo 225, 40 T.C.M. (CCH) 547, 548, T.C.M. (RIA) 80225 at 1003.]
Petitioner, like the taxpayers in the cases described above, feels badly treated. Although, as she observed in her trial memorandum, there is no negative income tax or personal equivalent of the net operating loss deduction that applies to her situation, we note that during the taxable year she enjoyed a variety of tax benefits. These included the exclusion of the *512 bulk of her disability pension from gross income, the long-term capital gain deduction, and the reduction, through averaging, of the rates regularly applicable to her taxable income for the year. As a result, application of the AMT causes the overall effective rate of Federal income tax on her net long-term capital gains realized in 1986 to be on the order of 12 percent, and the effective overall rate of tax on her economic income for the year to be substantially less than that. Our decision properly prevents petitioner from combining the benefits of averaging and the long-term capital gain deduction. See Riley v. Commissioner, 66 T.C. 141 (1976) (minimum tax); Okin v. Commissioner, T.C. Memo 1985-199 (AMT). In so doing, we give proper effect to the AMT, which was designed to limit the ability of taxpayers to unduly reduce their income tax liabilities by combining tax benefits. Respondent's determination that petitioner is subject to AMT is sustained. To reflect the foregoing and a concession by respondent, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code as in effect for the year in issue.↩
2. The minimum tax, enacted in 1969, was the precursor of the AMT, which was added to the Code by sec. 421(a) of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2763, 2871.↩
3. See Ferguson, Hickman, and Lubick, "Reexamining the Nature and Role of Tax Legislative History in Light of the Changing Realities of the Process," 67 Taxes 804↩, 812 (1989) (discussing "atmospheric" versus "focused" language in legislative history).