T.C. Summary Opinion 2004-97

UNITED STATES TAX COURT

ESTATE OF CLIFFORD C. HAUGEN, DECEASED,
AND AUDREY A. HAUGEN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6725-03S.              Filed July 26, 2004.

Audrey A. Haugen, pro se.

Randall L. Preheim, for respondent.


COUVILLION, Special Trial Judge:  This case was heard pursuant to section 7463 in effect when the petition was filed.[1] The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

_____

[1]    Unless otherwise indicated, section references hereafter are to the Internal Revenue Code in effect for the years at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies of $36,077 and $2,423, respectively, in petitioners' Federal income taxes for 1998 and 1999.[2]

The issues for decision are: (1) In calculating the taxes for the years 1998 and 1999 under the income-averaging provisions of section 1301, whether net operating losses (NOL) for 2 of the 3 base years in the income-averaging computation, which had been carried back to earlier years and for which income tax refunds were received as a result of such carrybacks, should be added back to the net income for such base years due to the tax benefits realized from the NOL carrybacks,[3] and (2) for the year 1998, whether a taxpayer's election to income average under

---

[2] Clifford C. Haugen and Audrey A. Haugen were husband and wife. Mr. Haugen died testate on May 7, 1998, and Mrs. Haugen was the executrix of her late husband's estate. For the year 1998, a joint Federal income tax return was filed in the name of Clifford C. Haugen, Deceased, and Audrey A. Haugen. For 1999, Audrey A. Haugen filed her return as a single person. Although the record does not reflect the heirs or successors to Mr. Haugen's estate, the Court assumes, and the parties have not placed at issue, any question that the heir, successor, or party at interest regarding Mr. Haugen's estate is petitioner Audrey A. Haugen. Consequently, the income and expenses for the year 1999, reported on the 1999 Federal income tax return by Mrs. Haugen, are presumed to include all interests of Mrs. Haugen's deceased spouse. For convenience, the Court refers interchangeably to "petitioner" or "petitioners" to include the interests of Clifford C. Haugen, deceased, as well as those of Mrs. Haugen.

[3] The Court's holding on the income-averaging issue for the 1998 tax year also resolves the sole issue for the 1999 tax year because one of the base years for 1999 is the year 1996, in which a NOL was carried back, and a tax refund was received as a result of the carryback.

section 1301 precludes applicability of the alternative minimum tax under section 55; alternatively, if section 55 is applicable, whether the "regular tax" in section 55(a)(2), which offsets the tentative minimum tax under section 55(a)(1), means the tax calculated under section 1, without the benefit of income averaging under section 1301.

This case was submitted fully stipulated under Rule 122. The agreed facts and the attached exhibits are so found and are incorporated herein by reference. At the time of his death, Mr. Haugen was a resident of Lewistown, Montana. At the time the petition was filed, Mrs. Haugen was a legal resident of Lewistown, Montana.[4]

Petitioners were in the cattle ranching business. They owned and operated a 7,000-acre cattle ranch near Lewistown, Montana, for nearly 30 years. Shortly after Mr. Haugen's death in 1998, petitioner, Mrs. Haugen, began liquidation of the business by selling the ranch and the assets used in its operation.

A joint Federal income tax return was filed by petitioners for 1998. The tax shown on that return was $74,977, based on the income-averaging provisions of section 1301. The return included

---

[4] Since the facts are not in dispute, the Court decides this case without regard to which party bears the burden of proof. Sec. 7491, therefore, is not applicable in this case.

a Schedule J, Farm Income Averaging, for computation of the tax. The 3 base years in the averaging computation were 1995, 1996, and 1997. Two of these years, 1995 and 1996, were years in which petitioners sustained NOLs. The NOLs for 1995 and 1996 had been carried back to prior years, and both NOLs were fully absorbed by the taxable income of such prior years. The NOL for 1995 had been carried back to 1992, and the unabsorbed portion of that NOL was carried forward to 1993, where the remainder of the 1995 NOL was fully absorbed. The 1996 NOL had been carried back to 1993 and was fully absorbed by the net income for 1993. With respect to the 1995 carryback, petitioners received income tax refunds of $23,163 and $3,086, respectively, of their 1992 and 1993 taxes. With respect to the 1996 carryback, petitioners received a refund of $17,510 of their 1993 taxes. Thus, the three refunds from these carrybacks totaled $43,759.

Petitioners reported taxable income of $476,055 for the year 1998 and taxable income of $414,742 for 1999. Appropriate elections were made to calculate the tax for both years under the income-averaging provisions of section 1301. To that end, each return included a Schedule J.[5] For the 1998 tax year, the

_____

[5] The income-averaging provisions of sec. 1301 apply to "elected farm income" that is defined generally under sec. 1301(b)(1)(A) as that portion of taxable income for the taxable year that is attributable to any farming business and that is specified by the taxpayer as elected farm income. For the year
(continued...)

averaging (base) years were 1995, 1996, and 1997. For the 1999 tax year, the base years were 1996, 1997, and 1998.

On Schedule J of the 1998 return, the taxable income of the 3 base years in the income-averaging computation was listed as follows:

>
> 1995 taxable income ($121,767)
> 1996 taxable income ($64,010)
> 1997 taxable income $248,208

Petitioners did not eliminate the NOLs on Schedule J of their 1995 and 1996 returns to reflect the carryback of the NOLs to the years 1992 and 1993.[6]

After the 1998 return was filed, petitioners were assessed $52,607 for the alternative minimum tax under section 55. That assessment was later reduced to $30,087. Thereafter, the examination division of the IRS made income adjustments to the

---

[5](...continued)
1998, of the $476,055 in taxable income, the elected farm income was $192,030. For the year 1999, of the $414,742 in taxable income, the elected farm income was $46,515. Respondent has not challenged the elected farm income amounts for the 2 years before the Court, nor does respondent deny petitioners' entitlement to income averaging.

[6]     In the carryback to 1992 and 1993, the NOLs for 1995 and 1996 were, respectively, $116,767 and $58,910, as sec. 172(d)(3) provides that no deduction for sec. 151 personal exemptions shall be allowed in the determination of a NOL. The reductions, therefore, of $5,000 and $5,100, respectively, for 1995 and 1996 from the negative income amounts reported on the 1995 and 1996 returns represent the elimination of the personal exemptions claimed on the returns.

1998 return totaling $315,587. Petitioners agreed to those adjustments but consented only to an assessment of additional tax of $23,360, based on the same income-averaging amounts on Schedule J of the original return, without any adjustment for the NOLs for 1995 and 1996 that had been carried back to earlier years. Respondent did not agree or consent to that computation method using the negative income amounts of the 1995 and 1996 base years.

Likewise, petitioner's 1999 income tax return was examined by the IRS, and petitioner agreed to an assessment of additional tax on income adjustments totaling $71,847. Petitioner's consent to this assessment was also based on income averaging and utilization of the same NOL for 1996 without any adjustment for the carryback of the 1996 NOL to 1993. Respondent likewise did not agree or consent to this computation method. See supra note 3.

The second issue is petitioners' disagreement over respondent's computation of the alternative minimum tax of $4,545 for 1998 under section 55.[7] Petitioner contends that where the

---

[7] As noted earlier, petitioner agreed to an AMT assessment of $30,087 for 1998 pursuant to agreed income adjustments but on a computation of tax under sec. 1301 without any adjustments to the negative taxable income for 2 of the base years in the income-averaging computation. The $4,545 AMT determination for 1998 is based on the same income adjustments agreed to by petitioner but with a tax computed under sec. 1301
(continued...)

taxpayer elects income averaging under section 1301, such election precludes applicability of the alternative minimum tax under section 55.  Alternatively, if section 55 is applicable, the offset to the tentative minimum tax, the "regular tax", should be calculated without the benefit of section 1301 income averaging.

In summary, the 1998 notice of deficiency determined a deficiency in tax of $36,077, of which $31,532 relates to section 1301 income averaging, and $4,545 is the alternative minimum tax under section 55.  The 1999 notice of deficiency determined a deficiency of $2,423, which relates only to the section 1301 income-averaging computation and the taxable income for 1 of the base years, 1996.

Under section 1301, an individual engaged in the trade or business of farming may elect to compute Federal income tax by averaging over the prior 3-year period all or a portion of taxable income attributable to farming.  In general, an individual who makes the election (1) designates all or a portion of taxable income attributable to the farming business for an election year as elected farm income; (2) allocates one-third of the elected farm income to each of the 3 prior taxable years; and

---

[7](...continued)
in which the NOLs for 2 of the base years in the income-averaging computation are added back to the income for those years.

(3) determines the tax by (a) computing the tax under section 1 for all income that is not elected farm income plus (b) the increase in the section 1 tax for each of the 3 prior years caused by including one-third of the elected farm income in each year.[8]

Respondent frames the first issue as "whether a taxpayer electing farm income averaging can reap a double benefit by carrying back net operating losses in base years, receiving a tax benefit therefrom, and then utilize the same negative taxable income in computing * * * tax liability under farm income averaging" in subsequent years. Petitioners, while admitting receiving income tax refunds attributable to the carryback of NOLs from 2 of the base years in the section 1301 income-averaging computation for the years at issue, contend that the

---

[8] Sec. 1301 was enacted as part of the Taxpayer Relief Act of 1997, Pub. L. 105-34, Title 1X, sec. 933(a), 111 Stat. 881, adding sec. 1301. That act was effective for 3 years, 1998, 1999, and 2000. The Omnibus Consolidation and Emergency Supplemental Appropriations Act of 1999, Pub. L. 103-277, sec. 2011, 112 Stat. 2681-902, made permanent the income-averaging provisions of sec. 1301. Both statutes limit applicability to any individual engaged in a farming business and apply only to electible farm income for the election year and the averagible farm income for 3 years. An earlier version of sec. 1301 was repealed by the Tax Reform Act of 1986, Pub. L. 99-514, sec. 151(a), 100 Stat. 2121, for taxable years beginning after Dec. 31, 1986. The earlier version of sec. 1301 was not limited to farm income and generally applied if the income of the current year exceeded 140 percent of the taxpayer's average income for the preceding 3 years by more than $3,000. These are the only apparent differences between the current sec. 1301 and the earlier repealed version.

Schedule J instructions were followed in the preparation and filing of the 1998 and 1999 returns. Petitioner argues that respondent is erroneously applying internal revenue regulations for section 1301 that were promulgated after the returns in question were filed. Petitioner argues, in effect, that respondent is retroactively applying internal revenue regulations to their 1998 and 1999 returns.

The promulgated internal revenue regulations under section 1301 do prohibit the double benefits realized by petitioners in carrying back NOLs realized in base tax years in the section 1301 income-averaging process, receiving tax refunds from such carrybacks, and then using the same NOLs as negative income in the section 1301 income-averaging computations for later years.

Respondent contends that, for the 2 base years, 1995 and 1996, in which NOLs were realized and carried back to prior years and for which tax benefits were received, in determining the tax for 1998 and 1999 under section 1301, the taxable income of the base years in that computation in which NOLs were carried back, should be adjusted by adding back to the income of the base years the amounts of the carried back NOLs. For example, the negative taxable income of petitioners for 1995 was $121,767, of which the NOL was $116,767. The $116,767 NOL was carried back to 1992 and 1993, which resulted in tax refunds for 1992 and 1993 taxes. Because of the tax benefits realized by petitioners from the NOL

carryback, in the income-averaging computation for the 1998 tax, respondent contends that the taxable income of petitioners for 1995 should be a negative $5,000, representing the dependency exemptions claimed for 1995 that were not allowed as part of the NOL. Instead, petitioners claimed on Schedule J of their 1998 return negative taxable income of $121,767. The same comparable figures were used on Schedule J of the 1999 return (which involved the 1996 carryback year), and respondent argues the same rule applies for that year as well.[9]

Although petitioners contend that they relied on the instructions for Schedule J in listing negative taxable income of the base years in their income-averaging computations in connection with the 1998 and 1999 returns, respondent points out on brief that petitioners failed to do so. The line instructions on Schedules J for 1998 and 1999, including the references for the listing of taxable income of base years from Form 1040, U.S. Individual Income Tax Return, clearly stated that, if taxable income for a carryback year was negative, for income-averaging purposes on Schedule J, the taxable income for such years should be zero. Petitioners, instead, on Schedules J for 1998 and 1999 reported the negative income amounts of the 2 carryback years,

---

[9] In the income-averaging computation for 1999, an additional adjustment is made to the taxable income of the 1996 base year to further account for the use of the 1996 NOL carryback to a prior year.

1995 and 1996. Respondent acknowledges that the reporting instructions (requiring negative income amounts of base years to be listed as zero) were based on temporary regulations for section 1301 then in effect. Respondent agrees, however, that, when the temporary regulations for section 1301 were made final, the final regulations differed from the temporary regulations with respect to negative income of base years in income averaging. Under the final regulations, taxpayers may list on Schedule J of their returns negative income realized in the base years for the averaging computation.

Respondent acknowledges that the 2000 IRS instructions for Schedule J, pursuant to the final section 1301 regulations, state:

> If you had taxable income from farming in 1998 or 1999 and your deductions exceeded your gross income for any of the 3 years preceding those years (base years), your taxable income for averaging purposes for a base year may be a negative amount. You can use that negative amount instead of limiting that amount to zero when figuring your tax using Schedule J for 1998 or 1999.

To accommodate taxpayers who filed 1998 and 1999 tax returns and elected income averaging that included base years with negative taxable income and such income was listed as zero on Schedule J of those returns, the year 2000 instructions recommended that such taxpayers file amended returns for 1998 or 1999 with Schedules J that would list the negative income of such base

years to allow tax refunds as a result of the negative income of such years in the income-averaging computation.

Respondent points out that, in the notices of deficiency to petitioner for 1998 and 1999, respondent has allowed petitioner the benefit of income averaging and, for the 2 base years having negative taxable income, 1995 and 1996, has included the negative income for these 2 years in the income-averaging computation, but only to the extent that the negative income of such base years was not part of the NOLs that were carried back to prior years. In effect, the income-averaging computation by respondent in the notices of deficiency include only, as negative income, the exemptions claimed for 1995 and 1996 that were not part of the NOLs.

Respondent argues, however, that, when a base year involves an NOL that is carried back to a earlier year, and a tax benefit is realized by the taxpayer from that carryback, section 1301 is not intended to recognize, in the income-averaging process, the NOL of such base year or years because of the tax benefits received in the carrybacks.

Respondent agrees that the internal revenue regulations issued pursuant to the current version of section 1301 were published on January 8, 2002, and, therefore, were not in effect when petitioners filed their 1998 and 1999 income tax returns.

The regulations clearly address factual situations such as those presented in this case that support respondent's position.

Section 1301(c) provides:

> SEC. 1301(c). Regulations.--The Secretary shall prescribe such regulations as may be appropriate to carry out the purposes of this section, including regulations regarding--
>
> > (1) the order and manner in which items of income, gain, deduction, or loss, or limitations on tax, shall be taken into account in computing the tax imposed by this chapter on the income of any taxpayer to whom this section applies for any taxable year * * * [Emphasis added.]

Section 1.1301-1(d)(2), Income Tax Regs., provides, in pertinent part:

> (2) Computation in base years. * * * For this purpose, all allowable deductions (including the full amount of any net operating loss carryover) are taken into account in determining the taxable income for the base year even if the deductions exceed gross income and the result is negative. If the result is negative, however, any amount that may provide a benefit in another taxable year is added back in determining base year taxable income. Amounts that may provide a benefit in another year include--
>
> > (A) The net operating loss (as defined in section 172(c)) for the base year;
>
> > (B) The net operating loss for any other year to the extent carried forward from the base year under section 172(b)(2); * * * [Emphasis added.]

The preamble for the final section 1301 regulations stated, in pertinent part:

a base year's taxable income may be negative but amounts, such as a net operating loss or certain capital losses, that may be deducted in one or more other taxable years in the form of a carryover or carryback must be added back in computing negative taxable income. The Schedule J for years after 1999 includes worksheets and instructions for determining negative taxable income for purposes of the income averaging computation. [T.D. 8972, 2002-1 C.B. 443, 445.]

These provisions are obviously in accordance with certain concerns Congress had in the enactment of the present version of section 1301 to prevent an unfair exploitation in the use of income averaging. This concern is reflected in the conference report on the legislation that became section 1301 from the following pertinent language of that report:

It is expected that such regulations will deny the multiple application of items that carryover from one taxable year to the next (e.g., net operating loss or tax credit carryovers). [H. Conf. Rept. 105-220 at 509 (1997), 1997-4 C.B. (Vol. 2) 1457, 1979.]

To be sure, the proposed and final regulations on section 1301 had not been released at the time petitioners filed their 1998 and 1999 income tax returns, and petitioners cannot be held to those regulations. Nonetheless, the statute and the legislative history suggest explicitly that Congress did not intend that taxpayers availing themselves of the benefits of income averaging under section 1301 should be allowed, in the averaging computation, to include negative income of base years

to the extent such negative income constituted a NOL that was carried back to prior years and for which refunds were paid to the taxpayer.  In the Court's view, that was the intent of Congress as reflected in the aforementioned legislative history. Adding back the NOL to the income of an averaging base year in such a situation insures against such a result.

The fact that regulations on section 1301 had not been promulgated at the time the 1998 and 1999 returns in this case were filed does not preclude this Court from interpreting the intent of Congress and applying the law as so interpreted.  In Occidental Petroleum Corp. v. Commissioner, 82 T.C. 819, 829 (1984), this Court stated:

> We note, of course, that section 58(h) is phrased in terms of directing the Secretary of the Treasury to prescribe regulations to carry out the stated legislative objective, and that the Secretary, to this day, some 8 years after the effective date of these new provisions, has not yet promulgated any such regulations.  Moreover, we note further that he has not even published in the Federal Register any proposed regulations in this respect.  However, the failure to promulgate the required regulations can hardly render the new provisions of section 58(h) inoperative.  We must therefore do the best we can with these new provisions.  Certainly we cannot ignore them.
>
> Congress could hardly have intended to give the Treasury the power to defeat the legislatively contemplated operative effect of such provisions merely by failing to discharge the statutorily imposed duty to promulgate the required regulations.  As already indicated, we must give effect to these provisions in the absence of regulations
> * * *

The Court, accordingly, sustains respondent on the income-averaging issue.

The second issue is the alternative minimum tax under section 55. Section 55(a) imposes a tax equal to the excess of (1) the tentative minimum tax for the taxable year, over (2) the regular tax for the taxable year.

Petitioner argues that, if a taxpayer elects income averaging, that method of computation of the tax is exclusive and trumps the alternative minimum tax under section 55. The Court does not agree with that argument. In the conference committee report to the Taxpayer Relief Act of 1997, Pub. L. 105-34, sec. 933(a), 111 Stat. 881 (enacting section 1301), the conferees stated: "the provision [sec. 1301] does not apply for purposes of the alternative minimum tax under section 55." H. Conf. Rept. 105-220 at 508 (1997), 1997-4 C.B. (Vol. 2) 1457, 1978. The proposed and final regulations to section 1301 include this same provision. The preamble to the final regulations states "There is no exception in the Code provisions relating to the alternative minimum tax that would permit the minimum tax to be computed without regard to the effect of farm income averaging". T.D. 8972, 2002-1 C.B. 443, 446. This statement of the law is consistent with the former version of section 1301 and a comparable provision imposing a minimum tax on tax preference income under section 56 of the Tax Reform Act of 1969. In Riley

v. Commissioner, 66 T.C. 141 (1976), the taxpayers had elected income averaging under the old version of section 1301, and respondent determined that the taxpayers were additionally liable for the minimum tax under section 56.  This Court held:

> respondent argues that the tax imposed by section 56 is a separate, self-contained provision which is distinct from the tax imposed by section 1, and that sections 1301 through 1305 are, on their face, not applicable to the computation of the tax imposed by section 56.
>
> We agree with respondent.  Congress enacted the minimum tax on tax preference items in the Tax Reform Act of 1969 in order to reduce the scope of certain existing tax preferences, including capital gains.  The tax imposed by section 56 is specifically stated to be "in addition to the other taxes imposed by this chapter."  Sections 56 through 58 appear to be a self-contained unit of taxation, whereas computation of the tax imposed by section 1 may involve the application of several other Code sections.  The deductions, exclusions, and credits allowed in the computation of section 1 tax may not be utilized in the computation of the tax imposed by section 56 unless specifically provided.
>
> Sections 1301 through 1305 do not provide a mechanism by which the minimum tax on tax preference income may be averaged.  Section 1301, on its face, has reference only to the tax imposed by section 1.  In our opinion, if Congress had intended to allow income averaging in the computation of section 56 tax, it undoubtedly would have said so.  We are unwilling to imply such an intent on the part of Congress. [Id. at 144.]

The Court, therefore, sustains respondent on this issue.

Petitioner also argues the meaning of the term "regular" tax in section 55(a)(2).  As noted earlier, the AMT applies to the extent (1) the tentative minimum tax exceeds (2) the regular tax.  Respondent determined that the "regular tax" in the AMT

computation is the tax that was computed under the income-averaging provisions of section 1301.  Petitioner contends that "regular tax" means the tax computed outside the income-averaging provisions of section 1301 under section 1.  The tax under section 1 would have been higher than the tax under the income-averaging provisions of section 1301 and, therefore, would lessen petitioner's liability for the AMT.  Petitioner's argument was rejected in Sparrow v. Commissioner, 86 T.C. 929, 934 (1986), and Walker v. Commissioner, T.C. Memo. 1991-469, affd. without published opinion 995 F.2d 235 (9th Cir. 1993).  Respondent, therefore, is sustained on this issue.[10]

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered for respondent.

---

[10] The Court recognizes that the Walker and Sparrow cases above were both decided under the earlier version of sec. 1301. The Court is not persuaded that the differences between the earlier and present versions of sec. 1301 preclude the rationale of these cases from applying in the instant case.